UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PAN AMERICAN ASSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO:     08-4999<br>C/W   08-5020 |
| ESTATE OF ROBERTO NAHLE HERNANDEZ AND MARIA EUGENIA ORTIZ GIACOMAN, BENEFICIARY | SECTION: "C" (4) |

ORDER

Before the Court is a **Motion to Quash Corporate Notice of Deposition (R. Doc. 42)** filed by the Plaintiff and consolidated Defendant, Pan-American Assurance Company, seeking an Order from this Court quashing Topic Number 4 from Defendant and consolidated Plaintiff, Maria Eugenia Giacoman's ("Giacoman") Notice of 30(b)(6) Deposition. Giacoman opposes the motion. (R. Doc. 47.) The motion shall be considered on the briefs.

**I.     Background**

This diversity action regards the purchase of a universal life policy by the deceased, Roberto Nahle Hernandez, from Pan-American, a Louisiana life insurance company. The Defendant, Giacoman, was the beneficiary of this policy. (R. Doc. 1 ¶ II.) Both the deceased and the Plaintiffs were residents of Torreon, Coahuila, Mexico. (R. Doc. 1, ¶ III.) Pan American filed the instant

declaratory action seeking a declaration that Pan American does not owe coverage under the policy. Giacoman filed a Complaint against Pan-American regarding the universal life policy, which was consolidated into the present action. (R. Doc. 3.)

In their Complaint, Pan-American alleges that on May 9, 2006, the deceased provided a medical history to Pan American and underwent a medical examination. In providing his medical history, the decedent denied that he had ever been diagnosed with cancer. (R. Doc. 1,¶ VIII.) On September 12, 2006, he signed a Supplementary Application in which he affirmed that there had been no change in his health. (R. Doc. 1, ¶ X.) According to Pan-American, however, two weeks before he signed the Supplementary Application, the deceased was diagnosed with metastatic liver cancer. (R. Doc. 1, ¶ X.) Six months later, on March 10, 2007, the deceased died from adenocarcionma[1]/hepatocellular carcinoma[2]. (R. Doc. 1, p. XIV.) Giacoman, the deceased widow, filed a claim for benefits under the policy on April 17, 2007, which was denied on December 13, 2007. (R. Doc. 1, ¶¶ XV, XVII.)

In her answer, Giacoman alleges that the deceased actually signed the Supplementary application on August 25, 2006. However, at the time of execution the application was not dated. Giacoman contends that after the supplementary application was executed by the decedent, someone other than the decedent entered the date of September 12, 2006. (R. Doc. 22, ¶ 9.) Specifically Giacoman alleges that Pan American agent, Romeo Cuellar, changed the date on the supplementary

---

[1] Adenocarcionma is a term used to describe cancers that start in the gland cells (cells that normally secrete a substance.) There are many types of salivary gland adenocarcinomas. *See* WHAT IS SALIVARY GLAND CANCER?,http://www.cancer.org/Cancer/SalivaryGlandCancer/DetailedGuide/salivary-gland-cancer-what-is-salivary-gland-cancer (last revised, Mar. 18, 2010)(last visited, November 23, 2010).

[2] Hepatocellular carcinoma is a type of liver cancer. *See* WHAT IS LIVER CANCER? http://www.cancer.org/Cancer/LiverCancer/DetailedGuide/liver-cancer-what-is-liver-cancer (last revised, Aug. 16, 2010)(last visited November 23, 2010).

application. Giacoman contends further that it was not until August 30, 2006, that the deceased received his diagnosis. (R. Doc. 22, ¶ 10.)

On October 10, 2010, the Defendant served a Rule 30(b)(6) Notice of Deposition upon the Plaintiff. One of the topics included in the notice, Topic Number 4, states that insurance agent Romeo Cuellar ("Cuellar"), and the census of individuals in which he has provided policies, would be discussed during the course of the deposition. Corresponding documentation was also requested.

The Plaintiff objected to producing the corresponding documentation. As a result, Giacoman moved this Court to issue an Order compelling the production of documents requested in Topic Number 4. (R. Doc. 35.) The Court denied the motion on the grounds that the requested documentation was irrelevant to the case at hand. (R. Doc. 45.)

Subsequently, the present motion was filed, seeking an Order quashing Topic Number 4 completely, so that the issues contained in the topic request may not be discussed during the December 1, 2010, deposition.

## II. Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope

of discovery is within the sound discretion of the trial court." *Coleman v. Amer. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(c). In assessing whether the burden of the discovery outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

### III. Analysis

The parties contest request 4 contained in the notice of Rule 30(b)(6) deposition which seeks:

> [a]ny agent files maintained by Pan-American on Romeo Cuellar, including his licensing and approval as a Pan-American agent, his territory, his premium volume, the census of his insureds (with personal data of insureds removed), including percentage of policies issued to Mexican nationals residing within the Republic of Mexico [sic].

For the same reasons contained in this Court's Order denying the motion to compel the production of documents, the Court finds that this topic request is irrelevant. The request seeks to question Cuellar on the area in which he served as an agent, including his premium volume, and a census regarding the individuals he has insured. It further seeks to question Cuellar on what percentage of policies he has issued to Mexican nationals who reside within the Republic of Mexico.

There is nothing in this request that is relevant to Cuellar's dealings with the deceased or

anything that would directly related to Cuellar's alleged changing of the date in which the deceased signed his supplemental application.  The issue in this case is whether or not the deceased applied for his insurance policy when he knew that he had medical issues.  Nothing in this request is relevant to this inquiry.  As a result, the Court finds that Topic 4 is an improper topic of discussion for the upcoming 30(b)(6) deposition.        Accordingly,

**IT IS ORDERED** that Plaintiff, Pan-American Assurance Company's **Motion to Quash Corporate Notice of Deposition (R. Doc. 42)** is hereby **GRANTED.**

New Orleans, Louisiana, this 24th day of November 2010

                                      **KAREN WELLS ROBY**
                                **UNITED STATES MAGISTRATE JUDGE**